1      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF TEXAS
2        AUSTIN DIVISION

3 TERRI TRUITT, F/K/A  ) Docket No. A 10-CA-582 SS
  TERRI TRUITT GRIFFITH  )
4           )
  vs.         ) Austin, Texas
5           )
  UNUM LIFE INSURANCE   )
6  COMPANY OF AMERICA   ) November 12, 2014

7

       TRANSCRIPT OF MOTION HEARING
8      BEFORE THE HONORABLE SAM SPARKS

9

10 APPEARANCES:

11 For the Plaintiff:    Mr. Rickey J. Brantley
            855 Texas Street, Suite 100
12           Fort Worth, Texas 76102

13

14 For the Defendant:    Ms. Lauren A. Welch
            McCranie, Sistruck, Anzelmo
15           909 Poydras Street, Suite 1000
            New Orleans, Louisiana 70112

16

17 Court Reporter:     Ms. Lily Iva Reznik, CRR, RMR
            501 West 5th Street, Suite 4153
18           Austin, Texas 78701
            (512)391-8792
19

20

21

22

23

24

25 Proceedings reported by computerized stenography, transcript
  produced by computer.

| 14:02:16 | 1 | THE COURT:  Okay.  This is 10-CA-582, <u>Truitt vs. UNUM</u>. |
| 14:02:29 | 2 | I'll take announcements. |
| 14:02:33 | 3 | MR. BRANTLEY:  Your Honor, my name is Rickey Brantley. |
| 14:02:35 | 4 | I represent Terri Truitt. |
| 14:02:36 | 5 | MS. WELCH:  Lauren Welch for UNUM Life Insurance |
| 14:02:40 | 6 | Company of America. |
| 14:02:41 | 7 | THE COURT:  All right.  I've read the plaintiff's |
| 14:02:42 | 8 | motion for summary judgment on the counterclaim based on the |
| 14:02:46 | 9 | administrative record.  I've got a motion to dismiss the |
| 14:02:49 | 10 | counterclaim, and a motion to strike discovery requests.  So |
| 14:02:55 | 11 | let's take the first two together, since they're related. |
| 14:03:00 | 12 | Mr. Brantley, you've got the lectern. |
| 14:03:04 | 13 | MR. BRANTLEY:  Your Honor, I believe you're well |
| 14:03:10 | 14 | familiar with this case.  The case was originally filed in August |
| 14:03:12 | 15 | of 2010.  This court originally entered judgment on the |
| 14:03:19 | 16 | counterclaim, which is what we're here today. |
| 14:03:21 | 17 | THE COURT:  I'm familiar with it.  This great principle |
| 14:03:27 | 18 | of all you have to do is get somebody to write the insurance |
| 14:03:30 | 19 | company some devastating letter, and they can deny the claim on |
| 14:03:34 | 20 | substantial evidence.  Although the one ingredient that's in |
| 14:03:38 | 21 | there that it certainly does mention is the representation of |
| 14:03:51 | 22 | airplane rides -- long airplane rides, couldn't do that, and |
| 14:03:55 | 23 | that's why part of the total disability was existing.  So that |
| 14:04:05 | 24 | and a few trash letters, the insurance company can put them in |
| 14:04:11 | 25 | the file as notice and doesn't have to do anything. |

14:04:14    1          But now there's a counterclaim, and the counterclaim,

14:04:20    2    whether -- well, it was a counterclaim then, too.  Counterclaim

14:04:26    3    has gone into that murky area of what an equitable recovery is.

14:04:32    4    The circuit has never biased that.  They've reversed several

14:04:40    5    cases, but what it is, nobody seems to know.  You think that it

14:04:51    6    ought to be decided on the administrative record.

14:05:00    7          MR. BRANTLEY:  Your Honor --

14:05:00    8          THE COURT:  First off, if you lose, how could you

14:05:04    9    calculate damages on only an administrative record?  And

14:05:09   10    secondly, there's no defense to it with regard to evidence

14:05:16   11    because everything is hearsay.  And while it's admissible

14:05:26   12    hearsay, notice, it's admissible, jury or non-jury trial, with

14:05:33   13    the instruction that it's not admitted for the truth -- for the

14:05:36   14    purposes intended.

14:05:41   15          And I don't know of any legal authority.  I really

14:05:48   16    don't know of any legal authority on this recovery for paid

14:05:55   17    benefits based on equity that come anywhere close to this case.

14:06:05   18    I'm familiar with the ones where they paid out of mistake.

14:06:11   19          MR. BRANTLEY:  Correct.

14:06:11   20          THE COURT:  I'm familiar with the others.  And, of

14:06:14   21    course, the courts say that's too bad, you made the payments and

14:06:19   22    the Congress didn't authorize that.  So that's the extent of my

14:06:22   23    knowledge.  So tell me why you think it's based on a closed

14:06:24   24    record.

14:06:24   25          MR. BRANTLEY:  I have to go backwards in time to do

14:06:26   1   that, Judge, if we could.

14:06:27   2        When this case originally began and the counterclaim

14:06:30   3   was originally filed, as the plaintiff and counter-defendant, at

14:06:36   4   that point, we filed a motion to dismiss the counterclaim.  The

14:06:41   5   Court, after consideration, ruled against us on the motion to

14:06:47   6   dismiss the counterclaim.  There was a scheduling conference

14:06:51   7   after that that was typed up and recorded, and the Court

14:06:57   8   mentioned the same issues at that point about the discovery that

14:07:02   9   would be needed.

14:07:04   10       And if the Court recalls, when you ruled on the motion

14:07:07   11   to dismiss, you dismissed the state law claims that -- and that

14:07:12   12   has become final.  The only claim that was out there at that

14:07:15   13   point was an equitable claim for restitution under E.R.I.S.A.

14:07:22   14   At that point, the Court had a scheduling conference, asked UNUM

14:07:27   15   if they wanted additional discovery.  If they wanted discovery in

14:07:32   16   pursuant of the counterclaim.  It was UNUM's position at that

14:07:35   17   time in that scheduling conference that everything was to be

14:07:38   18   determined on the administrative file.  We really took no

14:07:43   19   position on the counterclaim.  We took a position that in

14:07:46   20   E.R.I.S.A., original claim had to be determined that way.

14:07:51   21       And you asked at that time in that hearing if we wanted

14:07:54   22   to take an interlocutory appeal on the motion to dismiss, and my

14:07:59   23   statement to the Court at that time was, all you've done is rule

14:08:02   24   on the sufficiency of the pleadings.  It can be resolved on a

14:08:06   25   summary judgment matter.  It was resolved on a summary judgment

14:08:11  1  matter.

14:08:11  2          And in the Court's original order, the Court ruled in

14:08:16  3  our favor on the arbitrary and capricious claim, which got

14:08:21  4  reversed and rendered by the Fifth Circuit.  It also ruled in

14:08:25  5  favor of Ms. Truitt on the counterclaim and it addressed -- the

14:08:31  6  one complaint that the Fifth Circuit had about that was that this

14:08:36  7  court used a state law criteria for fraud, and the Fifth Circuit

14:08:42  8  said, no, you can't do that, it's an E.R.I.S.A. restitution

14:08:47  9  claim, and they had some language on that.

14:08:50  10         What -- the other thing that happened is in the

14:08:53  11 presentation of the motion for summary judgment, we presented an

14:08:57  12 affidavit because of some things that happened during the

14:09:00  13 pendency of the case.  UNUM took the position then, as well,

14:09:04  14 which we filed in our discovery motion, that constitutes waiver

14:09:09  15 that the Court could not consider anything else.  The Court could

14:09:12  16 only consider the administrative file.

14:09:15  17         So our original position has been that the counterclaim

14:09:21  18 is not a valid claim for restitution under E.R.I.S.A.  There is

14:09:28  19 no provision under the plan documents themselves -- when you look

14:09:32  20 at most of the equitable relief claim or restitution claims, they

14:09:39  21 involve overpayment of some sort, or they involve a third-party

14:09:44  22 subrogation claim that has a trust set up, something like that

14:09:51  23 set up, and a provision under the contract that allows the

14:09:58  24 insurance company to recover those amounts of money.

14:10:03  25         The only provision in this particular contract that

14:10:06  1  allows for restitution is for Social Security disability

14:10:10  2  benefits, which are not at issue here.  There's no plan document

14:10:15  3  provision that allows for the recovery of any sort of restitution

14:10:19  4  on behalf of UNUM.

14:10:21  5      THE COURT:  Well, there wasn't anything to do with

14:10:25  6  Social Security, either, was there?

14:10:26  7      MR. BRANTLEY:  Nothing.  This has nothing to do with

14:10:28  8  Social Security.

14:10:29  9      They simply took the position, as the Court recalls in

14:10:32  10  the original filings, the original motions for summary judgment

14:10:35  11  that were filed, that because of this subsequently discovered

14:10:41  12  information from Mr. Thomas, that her disability ended in 2005.

14:10:49  13  So in 2009, they took the position that her disability had

14:10:54  14  actually ended in 2005 from this degenerative disease,

14:11:00  15  degenerative condition, and that they had overpaid her for four

14:11:07  16  years.

14:11:08  17      So it's our position that the same evidence is

14:11:15  18  presented to the Court because of the position that UNUM took

14:11:21  19  before in the administrative file, and that the Court should

14:11:26  20  enter summary judgment or dismiss.  And the reason we filed the

14:11:30  21  motion to dismiss is we cited the Central States case as far as

14:11:36  22  the requirement for a no equitable resolution -- apologize,

14:11:43  23  Judge, I need to quit waving my hands around and hitting this

14:11:46  24  microphone.

14:11:47  25      THE COURT:  Every lawyer has done that this morning in

14:11:51  1   all the hearings.  Just push those things back.  They're

14:11:54  2   obviously too close.  You're not by yourself.  Every single

14:11:57  3   lawyer has hit those today.

14:11:58  4            MR. BRANTLEY:  I apologize.

14:11:59  5            THE COURT:  It's all right.

14:12:01  6            MR. BRANTLEY:  So we've tried to set our positions in

14:12:04  7   both of the motions that we filed.  We do believe either summary

14:12:07  8   judgment or dismissal is appropriate, based on the same pleadings

14:12:12  9   that the Court originally --

14:12:13  10            THE COURT:  Well, what did the circuit send back?

14:12:16  11            MR. BRANTLEY:  The circuit simply said they rendered on

14:12:20  12   the --

14:12:20  13            THE COURT:  If they wanted to dismiss, they would have

14:12:22  14   said dismissed.

14:12:23  15            MR. BRANTLEY:  They said that we're asking the Court to

14:12:25  16   review the materials and apply a federal court standard on fraud

14:12:32  17   and not the Texas standard on fraud.  There's not any direction

14:12:37  18   or -- I could not see the --

14:12:42  19            THE COURT:  What's the distinction?

14:12:44  20            MR. BRANTLEY:  Your Honor, I have to argue that if

14:12:53  21   there's a distinction, it's a distinction without a difference.

14:12:56  22   I don't know whether because there has to be some sort of

14:13:01  23   proximate cause related to all of this.

14:13:04  24            And so, they argued that -- you indicated that there

14:13:09  25   could be no reliance.  In your original -- in your original

14:13:12  1   judgment, you argued that the federal -- that the Texas law

14:13:19  2   involving fraud required reliance, and since there was an ongoing

14:13:23  3   investigation, there was video-taking of this lady, there was

14:13:26  4   extensive medical records obtained, there was a -- there was tax

14:13:31  5   returns obtained, that there could be no reliance.

14:13:35  6          The Fifth Circuit said that reliance was required in

14:13:42  7   Texas law, but that reliance was not required under federal

14:13:48  8   common law.  The causation is still there.  The other defenses

14:13:56  9   are still there.  Equitable relief still at the discretion of the

14:14:02  10  trial court.  There's no jury allowed.  There's no -- it is at

14:14:07  11  the discretion of the trial court.  That's clear.

14:14:15  12         So we may have different opinions as to how the Fifth

14:14:18  13  Circuit opinion reads, but I believe it very directly reads that

14:14:22  14  this is being sent back to the trial court to be reviewed with

14:14:28  15  the instruction that he is not to use the Texas standard for

14:14:32  16  fraud, which includes reliance.  And the federal -- Fifth Circuit

14:14:39  17  requirement for fraud does not include --

14:14:41  18         THE COURT:  Well, if that's the case, then you believe

14:14:45  19  that the benefits are still an active issue.  Because if I'm to

14:14:56  20  redetermine fraud and I find that there is no fraud, then there

14:15:05  21  would have been liability or there would be a lot of evidence

14:15:13  22  that wouldn't count.  So it's a little confusing.

14:15:17  23         MR. BRANTLEY:  I would like to be able to argue that,

14:15:19  24  Judge, but I believe what they're finding was related to the

14:15:22  25  benefits was that there was insufficient evidence to show that

14:15:27  1  UNUM acted in an arbitrary and capricious manner.

14:15:30  2         THE COURT:  Oh, I know.  That's --

14:15:32  3         MR. BRANTLEY:  We did argue at the trial court level

14:15:35  4  that that was an improper standard because one of the policies

14:15:38  5  that was presented did not have the discretionary clause attached

14:15:41  6  to it.  The Court did rule that an arbitrary and capricious

14:15:47  7  standard was the standard that had to be applied, and that the

14:15:51  8  plaintiffs should prevail even under the arbitrary and capricious

14:15:55  9  standard.

14:15:56  10         What the court of appeals said in their opinion was

14:15:58  11  that in light of no duty to investigate, in light of their having

14:16:07  12  this file that contained all this information that the Court was

14:16:13  13  incorrect in its finding that UNUM behaved arbitrarily and

14:16:17  14  capriciously.

14:16:18  15         THE COURT:  They had to open their eyes.

14:16:21  16         MR. BRANTLEY:  And then, on the counterclaim, they

14:16:24  17  simply addressed it in maybe a little over a paragraph, but not

14:16:29  18  much, and said that the issue was the Court's inclusion of the

14:16:33  19  requirement of the reliance in the opinion, in the order that you

14:16:39  20  wrote.  You wrote -- in your original judgment, you indicated

14:16:43  21  that there's no way -- you had many other reasons for granting

14:16:50  22  judgment on the counterclaim, including the issues that you

14:16:55  23  addressed in ruling in favor of Ms. Truitt on the claims that she

14:17:01  24  presented.  So all those are valid reasons for denying the

14:17:06  25  counterclaim.

14:17:07  1          The only thing the court of appeals said was that they

14:17:15  2    sent it back to you for -- because you had used the Texas

14:17:18  3    definition of fraud, which included reliance, and that they

14:17:22  4    wanted you to reconsider everything based under the federal

14:17:27  5    definition of fraud.  That's the way I read what the Fifth

14:17:31  6    Circuit's directive was.

14:17:33  7          Because of that, we do believe that summary judgment is

14:17:36  8    appropriate, because of the reasons that we set out in the

14:17:38  9    original motion to dismiss and the orig -- the reasons that are

14:17:42  10   set out by the Fifth Circuit in the Central States case, which

14:17:45  11   was a 2014 case that -- about the strict tracing requirements for

14:17:53  12   an equitable relief restitution claim, which is the only thing

14:17:58  13   that UNUM has left.  The only thing that is pled is an E.R.I.S.A.

14:18:03  14   equitable relief restitution claim.

14:18:06  15          And in Central States, the trial judge originally

14:18:11  16   denied the motion to dismiss and then, later, granted a motion to

14:18:15  17   dismiss the equitable relief restitution claim.  This was out of

14:18:21  18   the Northern District of Texas.  And then, the Fifth Circuit

14:18:23  19   affirmed that dismissal of the equitable relief claim.

14:18:30  20          THE COURT:  All right.

14:18:31  21          MR. BRANTLEY:  Anything else, your Honor?

14:18:32  22          THE COURT:  No.  I've got some other questions, but

14:18:34  23   we'll see Ms. Welch has to say first.

14:18:42  24          MR. BRANTLEY:  May I be seated?

14:18:43  25          THE COURT:  Sure.

14:18:47  1          MS. WELCH:  Good afternoon, your Honor.

14:18:49  2          My impression of the Fifth Circuit ruling is that the

14:18:56  3  restitution issue has already been decided, and they -- it's been

14:19:02  4  noted in their opinion that it was not appealed, and I think that

14:19:06  5  their opinion is based on the assumption that UNUM has the remedy

14:19:12  6  as equitable restitution, and that it's just to be decided based

14:19:16  7  on the federal common-law standard of fraud, which does not

14:19:20  8  include reliance.

14:19:23  9          THE COURT:  Didn't they decide it by non-appeal?

14:19:28  10          MS. WELCH:  Well, it was not the --

14:19:31  11          THE COURT:  Let me rephrase this.  What do we need to

14:19:35  12  do now?

14:19:37  13          MS. WELCH:  I think --

14:19:37  14          THE COURT:  It's ironic when the law is clear that your

14:19:40  15  client had no duty to investigate this crap, and now you want

14:19:47  16  restitution based on fraud that is not -- no one has ever been

14:19:54  17  able to prove it, or nobody has attempted to prove it.  So we

14:20:01  18  have to bring in a jury and have them to determine it?

14:20:05  19          MS. WELCH:  Well, my understanding was that it was

14:20:07  20  going to be based on the record.  But I understood that the Court

14:20:10  21  said that it wanted to hear evidence, and that was why we

14:20:15  22  propounded the discovery.

14:20:16  23          THE COURT:  Well, what evidence could it -- would

14:20:19  24  either one of you use for your suggestion?

14:20:25  25          We know that the payments stopped.  We know that there

14:20:32  1  was substantial evidence in the declining of granting further

14:20:41  2  payments that she wasn't totally disabled at a certain period of

14:20:47  3  time.  Let's forget about the "when" because going back to 2005

14:20:55  4  doesn't rack my memory.  It was -- it seems like at some point

14:21:02  5  after that, they reinstated some payments after a doctor's -- but

14:21:09  6  I have a lot of these.  I'm not certain about that.

14:21:13  7       There's no determination of fraud, period, in the

14:21:17  8  record by anybody.  By implication, your client may have thought

14:21:26  9  there was fraud, but they didn't have any evidence of it.  Not

14:21:33  10  anything other than the statement she couldn't fly because of her

14:21:44  11  illness and it developed that not only she could, she has.

14:21:50  12  That's all I could remember.  So if you go on the record, there's

14:21:58  13  no fraud, but you don't have the duty under the circuit law to

14:22:07  14  establish it.  And you would have the duty to establish it for

14:22:18  15  restitution, whereas counsel obviously is the one that had the

14:22:25  16  duty to prove no fraud under the holding of this case.

14:22:30  17       MS. WELCH:  But I think that the evidence -- all the

14:22:35  18  evidence in the record that was relied on by UNUM, the court of

14:22:38  19  appeals found it to be reliable because during the process of

14:22:41  20  record --

14:22:41  21       THE COURT:  No.  They found there was substantial

14:22:44  22  evidence, which is hardly anything at all.

14:22:46  23       MS. WELCH:  Well, they said the evidence was reliable.

14:22:48  24  And I think that they -- and they went through the whole process

14:22:51  25  how it works, and that once UNUM identified all of that, then she

14:22:54  1   had a duty to come forward if it was not correct and present that

14:22:58  2   evidence.  And she did not.

14:23:06  3            THE COURT:  The hearsay evidence of an ex-boyfriend,

14:23:13  4   that was not --

14:23:15  5            MS. WELCH:  It was travel itineraries, you know, it was

14:23:18  6   documents, and things of that -- it wasn't just e-mail.

14:23:19  7            THE COURT:  Well, I understand that.  But I don't --

14:23:28  8   UNUM made no claim for restitution of any nature before the

14:23:33  9   lawsuit was filed.

14:23:39 10            MS. WELCH:  I'm not certain whether -- that they did.

14:23:41 11   I don't know whether they -- I mean, they never tried to, you

14:23:44 12   know -- I don't think they said, send us the money back.  I don't

14:23:46 13   think they said that in the letter.

14:23:47 14            THE COURT:  Well, that's what you're after.

14:23:49 15            MS. WELCH:  Correct.

14:23:52 16            THE COURT:  Okay.  Well, tell me the -- what your idea

14:23:56 17   of the law is because I don't see how anybody gets anything

14:24:02 18   without any determination whatsoever of fraud.  And we can bring

14:24:09 19   in the jury and find out if there's fraud under federal

14:24:14 20   standards, whatever the distinction is there.

14:24:19 21            MS. WELCH:  I don't think we have a jury.

14:24:21 22            THE COURT:  Pardon?

14:24:22 23            MS. WELCH:  I don't think we have a jury trial.

14:24:23 24            THE COURT:  Well, that's true.  It might be up to me,

14:24:27 25   but I can always bring in a jury.  Y'all have the right to bring

14:24:32  1  in a jury.  And I like advisory juries because I think they make

14:24:37  2  -- I don't know that I've ever held against an advisory jury or

14:24:42  3  not.  I don't recall any, but I haven't had many.  I've had

14:24:51  4  several I've thought were advisory to the lawyers, but they

14:24:56  5  always seemed to make the right determination.

14:24:59  6         So how do you get restitution -- what is this fund

14:25:06  7  thing?  It's like you have to have a lien of some nature where

14:25:14  8  there is money in a fund in some of these cases I've read, trying

14:25:18  9  to figure out this.

14:25:20  10        MS. WELCH:  Well, those are the cases that involve the

14:25:23  11  -- it's not where plans -- where benefits were wrongfully paid or

14:25:28  12  obtained.  Those were the cases with the -- which Mr. Brantley

14:25:32  13  was talking about that involve contractual provisions.  The cases

14:25:38  14  that talk about ill-gotten gains and tainted funds, they do not

14:25:44  15  have strict tracing requirements.  But, I mean, again, I think

14:25:47  16  that that's -- that issue is not even before the Court.

14:25:50  17        THE COURT:  Well, then -- well, I don't see it, either.

14:25:54  18  I'm just trying to figure out what the basis of the restitution

14:25:57  19  is because the law is clear, if you make payments and you

14:26:08  20  shouldn't have, you can't get them back.

14:26:14  21        MS. WELCH:  Well, I don't think under these

14:26:15  22  circumstances that's the law.  I mean --

14:26:18  23        THE COURT:  Well, give me a case.

14:26:20  24        MS. WELCH:  Well, there was -- we cited some cases that

14:26:27  25  -- but, I mean, I don't know of any cases that are exactly on

14:26:30   1   point, but there are cases that refer to benefits that were

14:26:34   2   wrongfully obtained and then, allowed equitable restitution.

14:26:38   3   Those were cited in our brief.

14:26:41   4           THE COURT:  I've had cases where they paid the

14:26:44   5   insurance -- the insurance company has paid the hospital bill,

14:26:48   6   then finds out it didn't have coverage.  If it was an E.R.I.S.A.

14:26:53   7   policy, they couldn't get it back.

14:26:55   8           MS. WELCH:  But there's no fraud involved there.

14:26:57   9           THE COURT:  There's no determination of fraud in this

14:26:59  10   case, either.

14:27:00  11           MS. WELCH:  That's what's before the Court, I think.

14:27:02  12   That's what the Fifth Circuit sent back for the Court to decide.

14:27:07  13           THE COURT:  So I have to decide if there's sufficient

14:27:09  14   evidence for a factual determination of fraud?

14:27:13  15           MS. WELCH:  Correct.  And, I mean -- and the Court said

14:27:19  16   it wanted discovery.  I think that the Fifth Circuit said that

14:27:22  17   the evidence was reliable.  It concluded that.  So -- but because

14:27:28  18   the Court said it wanted discovery, basically we sent out mostly

14:27:33  19   request for admissions to find out if it's certain that all of

14:27:38  20   these things happened.  That was what I sensed was this court's

14:27:43  21   concern was that you could -- could you rely on, you know, that

14:27:47  22   stuff.

14:27:48  23           THE COURT:  Well, reliability is one thing.  Notice is

14:27:51  24   the other.  Who had the legal duty to substantiate the

14:28:07  25   allegation?  And in this case, when you look at it in that way,

14:28:12 1  it's clearly the plaintiff who's making the claim.  The plaintiff

14:28:17 2  had the duty to show capricious, arbitrary decision.  And I

14:28:27 3  mistakenly, admittedly, thought that the element of these

14:28:36 4  letters, and all of this stuff, is something that somebody ought

14:28:41 5  to have investigated before they would have made a decision and

14:28:49 6  cut off payments or made payments.

14:28:53 7          Well, there were other elements, and the Court held

14:28:59 8  that there was substantial evidence to justify the termination of

14:29:04 9  the payments, but they didn't hold it was fraud.

14:29:08 10         MS. WELCH:  What they held was that the Court's ruling

14:29:12 11  was based -- on the counterclaim was based on the application of

14:29:18 12  the Texas law, which it said was incorrect.  And also, they said

14:29:22 13  because of the Court's determination that the evidence was not

14:29:26 14  reliable.

14:29:33 15         THE COURT:  Well, not reliable in the sense of no

14:29:36 16  investigation to see if it was reliable.

14:29:39 17         MS. WELCH:  Well, I think they said that -- they found

14:29:43 18  several -- not only that they didn't have a duty, but they said

14:29:47 19  that they did have several indicia of reliability, and one being

14:29:53 20  that the documents matched up with things that were going along

14:29:57 21  in the claim file at the same time.  There was something else

14:30:02 22  they said, but they -- you know, they found that UNUM did seek to

14:30:07 23  verify.  And the biggest thing -- and they talk about the whole

14:30:09 24  process of how the administrative review works, and once UNUM

14:30:14 25  identified that evidence and said, we're not paying you because

14:30:17  1   we think you've been lying to us, she said nothing.

14:30:23  2             THE COURT:  Well, she had a medical report.

14:30:27  3             MS. WELCH:  I mean, she has a medical condition.

14:30:30  4   That's true.  A lot of people have medical conditions.  I mean,

14:30:33  5   it's -- you know, the question is, she's saying she can't sit for

14:30:36  6   more than 30 minutes, and she's flying all over the place.

14:30:41  7             THE COURT:  It would be simple if it was -- we could

14:30:46  8   make it simple if the Congress would make it simple if you, you

14:30:49  9   know, defrauded, you ought to be able to get your money back.  I

14:30:55  10  don't know why, but the law seems to not be that clear.  If this

14:31:00  11  lady never was totally disabled, she ought to pay you back every

14:31:05  12  dad-gum cent.

14:31:06  13            But now we have a situation if you can't find the

14:31:10  14  person and we go to a trial, you're going to lose, because you

14:31:14  15  don't have any evidence that would indicate a fraud, except for

14:31:20  16  cross-examination of this lady, which may be enough but maybe

14:31:24  17  not.  I don't know.  Because everything that your carrier had was

14:31:31  18  hearsay, which I don't care if the Court said reliable or not,

14:31:38  19  it's not admissible.

14:31:44  20            Let's look at it from a practical standpoint for a

14:31:47  21  minute.  It seems to me both of you indicate that the decision

14:31:55  22  should be made based on the administrative record.  So if I make

14:31:59  23  any kind of a judgment, then you can take it up and see if y'all

14:32:03  24  are right.  But that's just going to extend this litigation.

14:32:08  25  Nobody has ever found fraud.  And you can't be paid unless

14:32:13  1  there's fraud.  You can't get your money back unless there's

14:32:16  2  fraud.

14:32:22  3        So I don't know what good a trial does, except if a

14:32:30  4  jury finds fraud, I have no problem in finding out when it

14:32:36  5  started, and then, all payments subsequent to that, she has to

14:32:41  6  pay back if that would be the law.  But I can't grant a

14:32:58  7  counterclaim based on fraud when there's no finding of fraud.

14:33:07  8  The fact that UNUM could consider that, along with other stuff,

14:33:14  9  does not make it fraudulent.  It just makes it that they had a

14:33:19  10  basis not to pay the claim.

14:33:29  11        I was kind of hoping y'all would have the answer to

14:33:32  12  that because I don't.

14:33:33  13        MS. WELCH:  Well, I mean, like I said, I think, you

14:33:34  14  know, given the Court's view on that, then we should be, I mean,

14:33:39  15  allowed to conduct discovery.  But, you know, I acknowledge that

14:33:46  16  we took -- you know, we thought it was going to be decided based

14:33:50  17  on the record.

14:33:51  18        THE COURT:  Well, what about his argument that you've

14:33:55  19  waived any trial?

14:33:59  20        MS. WELCH:  Well, we didn't -- as an example, I put in

14:34:03  21  my memo is it's like losing motion for summary judgment.  I mean,

14:34:05  22  it doesn't change your position.  But if the Court says we're

14:34:07  23  going to have a trial, then we have a trial.

14:34:09  24        THE COURT:  No, no, no.  I'm sorry.  I'm not clear.

14:34:13  25        He says you had a counterclaim and I -- when I granted

14:34:27  1  summary judgment so that y'all could take it up, you didn't take

14:34:32  2  up the counterclaim.

14:34:34  3          MS. WELCH:  He did not take up.  We won.

14:34:36  4          THE COURT:  Yeah.  You won on no payment.

14:34:39  5          MS. WELCH:  We won on whether we had the right to bring

14:34:41  6  the counterclaim.

14:34:43  7          THE COURT:  So you made the argument, then -- well,

14:34:57  8  that's what I've got.  The counterclaim.  So it's your

14:35:03  9  counterclaim.  What do you want to do with it?

14:35:07 10          MS. WELCH:  Well, I think given the Court's concern

14:35:12 11  about whether the evidence is reliable, even though I think the

14:35:17 12  Court said it was, then I think we should be allowed to proceed

14:35:20 13  with our discovery.

14:35:22 14          THE COURT:  Well, proceed with what?  I'm sorry.

14:35:28 15          MS. WELCH:  The discovery.

14:35:30 16          THE COURT:  Okay.  You know, this isn't the first time,

14:35:45 17  or the second, or the third time the circuit has remanded, and

14:35:56 18  neither the judge nor the lawyers know what's left or how to

14:35:59 19  proceed.  I almost wish you could pick up the phone and call them

14:36:04 20  and ask.

14:36:10 21          They did leave you with a counterclaim and the record

14:36:19 22  it seemed to be -- would seem to me, counsel's wrong about one

14:36:25 23  thing.  Equitable judgment is reviewable by law.  It's a legal

14:36:28 24  determination, so it's not a factual determination.  The facts

14:36:32 25  that lead to it are factual.  So I think you are entitled to

14:36:46  1  discovery.

14:36:49  2          Have you deposed -- you haven't had any discovery?

14:36:54  3          MS. WELCH:  We have outstanding discovery.  And that's

14:36:56  4  when he filed the motion to strike and we -- notice for

14:36:57  5  deposition.

14:36:58  6          THE COURT:  All right.  Let's hear the motion to quash.

14:37:02  7  Same motion, second verse?

14:37:05  8          MR. BRANTLEY:  Little bit different, Judge.  The

14:37:07  9  argument on the discovery motion is an argument of judicial

14:37:15  10  estoppel.  We've gone through two discovery deadlines already on

14:37:18  11  this case.

14:37:19  12          THE COURT:  Okay.  Well, that's overruled.  So go to

14:37:21  13  your next.  There's no judicial estoppel after the circuit

14:37:27  14  opinion sending it back on remand.

14:37:32  15          MR. BRANTLEY:  Except, your Honor, the position that

14:37:37  16  was taken on the counterclaim in the original opinion involved an

14:37:44  17  objection to additional discovery by UNUM.  UNUM won on that

14:37:52  18  motion in the motion to strike the affidavit.  So UNUM took the

14:38:00  19  position originally, and in the motion for judgment, and in the

14:38:04  20  motion for summary judgment, that everything was to be determined

14:38:08  21  on the administrative file.

14:38:11  22          UNUM prevailed based on the opinion that the position

14:38:16  23  that it took with the trial court, UNUM prevailed at the circuit

14:38:23  24  in reliance on that opinion because there was no discovery on the

14:38:27  25  original claim.  There was no discovery as to the cross-claim,

14:38:36  1  the original petition that was made by Ms. Truitt.  And when Ms.

14:38:41  2  Truitt tried to present an affidavit to address some of the

14:38:44  3  issues, UNUM filed a motion to strike it as being outside of the

14:38:48  4  administrative record, and that no discovery was to be allowed.

14:38:54  5      And this court granted, in part, UNUM's motion to

14:39:00  6  strike on that issue.  And then, the circuit basically in taking

14:39:06  7  UNUM's position on the counterclaim sent it back, not saying

14:39:11  8  additional discovery is to be done, not saying anything other

14:39:15  9  than the Court --

14:39:16  10      THE COURT:  Well, but no additional discovery would be

14:39:19  11  allowed on your client's claim for benefits.  The record that

14:39:24  12  they had was either sufficient or not.  So the discovery would be

14:39:33  13  on the counterclaim, I suspect.

14:39:36  14      MR. BRANTLEY:  Which is the definition of judicial

14:39:38  15  estoppel, Judge.  They took the position originally that no

14:39:41  16  discovery was to be allowed on either claim.  On either claim.

14:39:46  17  The claim by Ms. Truitt or their counterclaim.

14:39:49  18      THE COURT:  And did you appeal that?

14:39:52  19      MR. BRANTLEY:  No, Judge, I did not.  But I won at the

14:39:58  20  trial court level on both the claim by Ms. Truitt and the

14:40:05  21  counterclaim.  So I didn't have the right to appeal.

14:40:10  22      Ms. Welch has taken the position that I should have

14:40:13  23  appealed the order on the Court's motion to dismiss, but the

14:40:20  24  motion to dismiss only addressed the pleadings.  The Court was

14:40:23  25  clear in its order that it wasn't making any factual

14:40:28  1   determinations.  It was only addressing the sufficiency of the

14:40:31  2   pleadings.

14:40:32  3         So I couldn't appeal the denial of the motion to

14:40:36  4   dismiss because the Court noted in its original opinion that it

14:40:41  5   wrote in January 2012 that that issue was moot since you were

14:40:48  6   ruling in Ms. Truitt's favor on the counterclaim itself.  And so,

14:40:57  7   the situation was Ms. Truitt prevailed on both the counterclaim

14:41:02  8   and on her original claim, and she had no issues to appeal.  I

14:41:08  9   could not have appealed that.

14:41:10  10        And so, the circuit's opinion does not negate the

14:41:18  11  judicial estoppel argument in that circumstance because Ms.

14:41:21  12  Truitt had no right to appeal either the ruling on the motion to

14:41:26  13  dismiss because of the Court's subsequent finding that she

14:41:30  14  prevailed on the claim and had no right to appeal the discovery

14:41:37  15  order, which also included the UNUM's motion to strike the

14:41:42  16  extraneous materials that Ms. Truitt put before the Court for

14:41:48  17  consideration of the counterclaim and the original claim, and

14:41:52  18  which the Court granted in part and denied in part.

14:41:56  19        So we had no right to appeal that, either, because Ms.

14:41:59  20  Truitt prevailed on both of the issues of the trial court level.

14:42:03  21  So I respectfully believe that the Court is incorrect that

14:42:09  22  judicial estoppel's out the window because of what the Fifth

14:42:13  23  Circuit has said.

14:42:15  24        The other issue that's occurred is the discovery

14:42:17  25  deadline is coming to a close.  Discovery was never sent until we

14:42:24  1  filed the motion for summary judgment, which required UNUM to

14:42:27  2  come forward with evidence to show that there are some facts

14:42:36  3  which would preclude summary judgment.  They haven't done that.

14:42:41  4  They took the position simply that the ruling on the motion to

14:42:44  5  dismiss was somehow a finding by the Court of equitable relief

14:42:53  6  when the Court is clear in its order on the ruling for the motion

14:42:56  7  to dismiss that no factual determinations were made.

14:42:59  8          THE COURT:  No factual determinations are ever made in

14:43:03  9  a Rule 12 motion.

14:43:05  10         MR. BRANTLEY:  It's right.  No.  It's hornbook law.

14:43:09  11         But the position they take in the response to motion

14:43:12  12 for summary judgment is not to present any facts, it's not to

14:43:15  13 present any affidavits, it's not to present anything showing that

14:43:19  14 there have been damages, there has been fraud, there has been

14:43:22  15 something else.  It's simply to argue that the Court's already

14:43:26  16 decided that when it ruled in favor of UNUM and ruled against Ms.

14:43:30  17 Truitt on her motion to dismiss, that's their argument in

14:43:35  18 response to the motion for summary judgment.  So I'm going back

14:43:38  19 to the original stuff.

14:43:39  20         The discovery, your Honor, is -- what we have now is

14:43:43  21 after a motion for summary judgment was filed, UNUM sent, I

14:43:50  22 think, 161 requests for admissions, 25 interrogatories, and

14:43:54  23 multiple requests for production.  And because of the position

14:43:58  24 they had taken all along, we did file a motion to quash all this.

14:44:02  25 The discovery deadline -- the discovery that was sent by UNUM was

14:44:08  1  sent out of time where as a plaintiff under the discovery rules,

14:44:12  2  the discovery deadline that the Court has set out, Ms. Truitt

14:44:16  3  can't send discovery to UNUM as to what are the facts that you're

14:44:20  4  using to base all this on.

14:44:22  5         The discovery deadline is approaching within the next

14:44:25  6  two weeks, I think.  I think we're --

14:44:27  7         THE COURT:  November 27.

14:44:28  8         MR. BRANTLEY:  Right.

14:44:30  9         So UNUM sends the discovery after the motion for

14:44:33 10  summary judgment is filed.  We took the -- we still believe we're

14:44:37 11  correct in the judicial estoppel argument because of the position

14:44:42 12  of both parties when the original judgment was made.  The

14:44:46 13  position that UNUM has taken all along.  Even in the response to

14:44:50 14  our motion to quash the discovery, they said we don't have a

14:44:54 15  position in this on the certificate of conference.  We believe it

14:44:57 16  needs to be decided on the administrative file.

14:44:59 17         They took that position in the formal filing that they

14:45:03 18  made in response to our motion to quash.  We believe this needs

14:45:06 19  to be decided on the administrative file.  At this point, with

14:45:12 20  the discovery deadline quickly approaching, I believe this is the

14:45:17 21  definition of judicial estoppel.  This is -- this case has been

14:45:23 22  pending since 2010.  They took actions in the original --

14:45:28 23         THE COURT:  Well, this part of it was October of 2013

14:45:35 24  with the discovery -- the scheduling order.  And you've got

14:45:39 25  dispositive motions in January.  You jumped the gun on that, but

14:45:43 1 there's nothing wrong with that. And then, the case is set for

14:45:46 2 trial, but you've got plenty of time. I'll have to review what

14:46:08 3 the circuit said on the pleading of the counterclaim. They

14:46:17 4 obviously sent it back. But you're representing to me that it

14:46:26 5 wasn't in there to send back because I dismissed it.

14:46:30 6 MR. BRANTLEY: No, Judge. I apologize if that's -- you

14:46:34 7 dismissed the state law counterclaims.

14:46:37 8 THE COURT: And kept the fraud.

14:46:38 9 MR. BRANTLEY: No -- well, it's actually not tailored

14:46:42 10 as -- there's an equitable restitution claim under E.R.I.S.A.

14:46:46 11 Fraud is not contained anywhere in the --

14:46:50 12 THE COURT: So the Rule 12 just knocked out the state

14:46:52 13 causes of action because they didn't apply to E.R.I.S.A.

14:46:55 14 MR. BRANTLEY: Correct. And so, the only claim that is

14:46:57 15 remaining is a claim for equitable restitution under E.R.I.S.A.

14:47:06 16 Part of the motion to dismiss was a Rule 8 motion to dismiss,

14:47:12 17 Twombly, is that what it's called, motion? And that was denied,

14:47:17 18 as well.

14:47:33 19 THE COURT: Okay. All right. And your position that

14:47:42 20 since October the 10th of last year, you've done no discovery in

14:47:45 21 the case until just recently?

14:47:48 22 MS. WELCH: We did it in October, your Honor, and --

14:47:51 23 THE COURT: Well, in a year.

14:47:54 24 MS. WELCH: I know. I apologize. I lost my brother

14:47:56 25 this year. I have another friend -- I did wait late to do it.

14:48:01  1   But it was done in a certain time that they could respond.

14:48:04  2        THE COURT:  It was done where, you know, unless I

14:48:10  3   thought there was really some shenanigans going on, I don't care.

14:48:17  4   As long as the discovery was initiated before the end of

14:48:20  5   discovery, 90 percent of the time, I enforce it.

14:48:25  6        So you want to take the deposition of the plaintiff?

14:48:29  7        MS. WELCH:  Correct.  And we have some written

14:48:30  8   discovery.

14:48:31  9        THE COURT:  Well, let's get into the written discovery,

14:48:34  10  as much as I enjoy listening to both of you because you're

14:48:37  11  prepared.  What written discovery are we objecting to?

14:48:47  12       MR. BRANTLEY:  Your Honor, my time for responding has

14:48:49  13  not come and gone yet.

14:48:51  14       THE COURT:  All right.

14:48:53  15       MR. BRANTLEY:  So if the Court --

14:48:55  16       THE COURT:  Well, let me ask the two of you to do this.

14:49:00  17  Y'all sit down.  I'm going to allow the deposition, and I'll

14:49:04  18  allow some reasonable written discovery.  Figure out what you

14:49:10  19  think you're going to need and see if you can agree to that; and

14:49:14  20  if you can't, then just tell me what you're objecting to, and I

14:49:18  21  could make the ruling, just like that, on discovery.  We had

14:49:22  22  enough of those this morning.

14:49:23  23       MR. BRANTLEY:  Could I pose one request that's not been

14:49:27  24  made in writing since -- the discovery was sent to us basically

14:49:34  25  after we filed the motion for summary judgment with a due date

14:49:39  1   coming up about the time of the discovery deadline of -- because

14:49:45  2   of we've not sent -- no discovery was sent to us, we have not

14:49:48  3   asked for depositions, not sent interrogatories or requests for

14:49:51  4   admissions, or anything, based on UNUM's position that this was

14:49:56  5   to be decided on the administrative file.

14:50:01  6          If the Court is going to allow depositions to be taken,

14:50:05  7   I'm assuming that the Court will allow me to depose a

14:50:09  8   representative of UNUM, as well?

14:50:11  9          THE COURT:  All you have to do is do a 30(b)(6) notice.

14:50:15  10  She doesn't have any basis to object.  UNUM will object, but you

14:50:19  11  can take the deposition.  Sure.

14:50:21  12         MR. BRANTLEY:  Okay.

14:50:22  13         THE COURT:  It's their alleged cause of action.  But,

14:50:27  14  you know, April is some time away, but it's going to come.

14:50:32  15         MR. BRANTLEY:  I know it is, Judge.  The discovery

14:50:34  16  deadline is the end of this month, though.

14:50:35  17         THE COURT:  True.

14:50:36  18         MR. BRANTLEY:  That's the deadline I have concern with

14:50:39  19  right now.

14:50:40  20         THE COURT:  I don't know what it is about Austin

14:50:42  21  lawyers.  It's my 23rd year back in Austin.  When they get a

14:50:51  22  scheduling order, they think they don't have to do anything for a

14:50:55  23  period of time.  Now, I was trained by an incredible law firm,

14:51:08  24  and I've been blessed to try cases all over the United States,

14:51:14  25  many major cases.  I was elected to the American College in 1983.

14:51:23  1   It's hard to believe.  I was young.  I was young then.  I was in

14:51:28  2   law school at 19.

14:51:37  3        The guy that trained me is today still the very best

14:51:41  4   trial lawyer I've ever seen, movies or no movies, in the

14:51:47  5   courtroom.  And in 90 days from answering, 90 days from

14:51:55  6   answering, if I didn't have a deposition of the plaintiff -- I

14:51:57  7   was always defense lawyer -- expert reports, if they were product

14:52:04  8   liability cases or initial interrogatories on contentions if they

14:52:09  9   were security cases, whatever kind of case they are.  It was a

14:52:15  10  personal injury case, the medical, and an evaluation in the file,

14:52:22  11  90 days, I had to go see him.  That was true of all of the other

14:52:27  12  trial lawyers in the firm, too, and you really didn't want to go

14:52:31  13  see him.

14:52:34  14       And I have a constant problem with this docket with

14:52:39  15  people coming in and wanting to extend discovery, usually joint.

14:52:48  16  Because my docket is so heavy and because we're already into -- I

14:52:53  17  finished up today June of '16 settings, I grant it and I tell the

14:53:03  18  lawyers, okay, just give me a supplementary scheduling order

14:53:07  19  because you've got four or five months to trial.  And most of the

14:53:12  20  cases, as y'all probably know, in four months, you can get ready

14:53:16  21  for anything.

14:53:19  22       But it just amazes me -- and you've had some personal

14:53:24  23  tragedies in your family, so I can kind of understand that.  But

14:53:29  24  to go a year and just let the case sit there, you know, if I had

14:53:37  25  any criticism, I wish you'd have filed the motion for summary

14:53:42   1   judgment earlier, and then, we could have gotten this out of the

14:53:46   2   way.  I, frankly, state for the record, I have no idea what the

14:53:49   3   Fifth Circuit wants me to do, and I think it's pretty sure y'all

14:53:54   4   don't, either.

14:53:55   5          So let's get the discovery on and it shouldn't be a

14:54:01   6   whole lot because this is probably a three- or four-witness case.

14:54:13   7   And looks like if it's an equity case, I guess y'all have agreed

14:54:21   8   it's equity, we could try it to the Court and y'all could present

14:54:24   9   whatever evidence, and then, I could make findings of fact and

14:54:27  10   conclusion of law, and then, you can take it up and get rid of

14:54:30  11   it.

14:54:31  12          But, otherwise, I don't see any other way of getting

14:54:36  13   rid of it, unless it comes up and goes back down with more

14:54:41  14   specific instructions.  Unless y'all can give me that golden key

14:54:45  15   and I'll be glad to do it.  So see if you can get the reasonable

14:54:53  16   -- you know, it ought not to be too tough for counsel to tell you

14:55:00  17   what discovery they want, tender your client, take your 30(b)(6)

14:55:08  18   deposition.  Y'all ought to be able to do that easy in a couple

14:55:11  19   of months, even with December coming up, and then, decide what

14:55:20  20   you want to do.

14:55:21  21          In the interim, I'll hold your motion for summary

14:55:27  22   judgment.  I'm not going to rule on it because my intent right

14:55:32  23   now is to let y'all have your discovery, have a hearing where

14:55:36  24   we've got evidence, one way or the other, findings one way or the

14:55:40  25   other, and then, let you go back up and tell them that dumb judge

14:55:44  1   in Austin didn't have any idea what I was supposed to do.  It's

14:55:51  2   not the first time they'll hear that.

14:55:53  3          MR. BRANTLEY:  Your Honor all right with us doing the

14:55:57  4   depositions and the discovery after the proposed deadline that

14:55:59  5   you've got here?

14:56:00  6          THE COURT:  Yes.  Just agree to it.  But see if you can

14:56:03  7   agree to reasonable discovery.  I don't allow unreasonable

14:56:07  8   discovery, as you know, but there may be some reasonable

14:56:11  9   discovery she's entitled to, not 150 counts of it.  But.

14:56:15  10         MS. WELCH:  Just request for admissions, yes or no,

14:56:19  11  going through the facts.

14:56:21  12         THE COURT:  When I got those though as a lawyer, it

14:56:24  13  would irritate me so that I would make sure that every one of

14:56:30  14  them was quasi.  And I see that frequently.  I'm not saying that

14:56:37  15  you've got a form or anything.  It's just rarely, unless it's a

14:56:44  16  paper case, do you need more than 15 or 20 requests for

14:56:50  17  admissions.

14:56:50  18         MS. WELCH:  Well, again, in this case, it was with all

14:56:53  19  those -- you know, is this a correct copy of an e-mail that you

14:56:56  20  sent?  That kind of thing.

14:56:58  21         THE COURT:  Well, you can do that over a cup of coffee,

14:57:03  22  I'll bet.

14:57:05  23         MS. WELCH:  But we have to present evidence to the

14:57:07  24  Court.  I mean, you know, if the Court's concern is reliability

14:57:10  25  of the documents that were provided.

```
14:57:12   1        THE COURT:  Yeah, but there's not any dispute between
14:57:14   2   the two of you as to what was presented to UNUM, and there's not
14:57:17   3   any dispute as to what he sent over there.  So if you're talking
14:57:22   4   about authenticity --
14:57:22   5        MS. WELCH:  It was whether those documents were genuine
14:57:25   6   was, I thought, what the Court was concerned about.
14:57:30   7        THE COURT:  Whether it was genuine.
14:57:32   8        MS. WELCH:  The e-mails, whether they were --
14:57:33   9        THE COURT:  Yeah, if you've got to prove them up.  But
14:57:36  10   either one of you are going to make you prove up e-mails that
14:57:39  11   each of you have in your files.  Particularly when you're -- the
14:57:45  12   80 percent of the case was based on the record.
14:57:50  13        MS. WELCH:  Right.
14:57:50  14        THE COURT:  Yeah.  You don't have to get them to admit
14:57:53  15   it.  He'll -- if he sent you an e-mail.
14:57:56  16        MS. WELCH:  No, no, not me and him.  I'm talking about
14:57:58  17   the ones for the plaintiff, the ones that the boyfriend gave UNUM
14:58:01  18   about she was, you know, saying one thing here, you know, telling
14:58:06  19   him one thing in an e-mail and telling him something else --
14:58:09  20        THE COURT:  Yeah.  I'd like to see you get an affidavit
14:58:11  21   from him.
14:58:11  22        MS. WELCH:  Affidavit, huh?  Well, he's out of -- you
14:58:16  23   know, he's not even in the country, I don't think.
14:58:17  24        THE COURT:  Yeah.  See, he's something that somebody
14:58:19  25   ought to have investigated, still, in my opinion, but that's
```

14:58:22  1 | okay.  But he already knows my ruling that they're all going to
14:58:30  2 | come in on notice, even, though they're hearsay, but they're not
14:58:39  3 | evidence of any truth of the matter.  So you may want to find
14:58:44  4 | him, if you can.  But I should have -- when I took this job, the
14:58:52  5 | pay was so poor, and it still is, that I don't give legal advice
14:58:55  6 | anymore.
14:58:58  7 |         All right.  So we know where we're going now?  Thank
14:59:03  8 | y'all for coming in and thank you for being prepared.
14:59:06  9 |         MR. BRANTLEY:  Thank you, your Honor.
14:59:07 10 |         MS. WELCH:  Thank you.
14:59:08 11 |         THE COURT:  All right.  We'll take ten minutes.
         12 |         (End of proceedings.)
         13 |
         14 |
         15 |
         16 |
         17 |
         18 |
         19 |
         20 |
         21 |
         22 |
         23 |
         24 |
         25 |

1                              *  *  *  *  *  *

2

3

4    UNITED STATES DISTRICT COURT)

5    WESTERN DISTRICT OF TEXAS    )

6

7        I, LILY I. REZNIK, Official Court Reporter, United States

8    District Court, Western District of Texas, do certify that the

9    foregoing is a correct transcript from the record of proceedings

10   in the above-entitled matter.

11       I certify that the transcript fees and format comply with

12   those prescribed by the Court and Judicial Conference of the

13   United States.

14       WITNESS MY OFFICIAL HAND this the 12th day of December, 2014.

15

16

17                               /s/Lily I. Reznik
                                 LILY I. REZNIK, CRR, RMR
18                               Official Court Reporter
                                 United States District Court
19                               Austin Division
                                 501 W. 5th Street, Suite 4153
20                               Austin, Texas 78701
                                 (512)391-8792
21                               Certification No. 4481
                                 Expires:  12-31-14
22

23

24

25